[No. 30392. Department Two. March 25, 1948.]

FREDERICK L. McCLINTOCK, JR., *et al.*, *Respondents*, v. R. P. ALLEN, *Appellant.*[1]

[1]Reported in 191 P. (2d) 679.

*Preston, Thorgrimson & Horowitz,* for appellant.

*Kahin & Carmody* and *Joe S. Pearson,* for respondents.

STEINERT, J.—This was an action to recover damages for personal injuries and property impairment resulting from an automobile collision. The cause was tried to a jury, which rendered a verdict in favor of plaintiffs. The trial court denied defendant's motion for a new trial and entered judgment on the verdict. Defendant appealed.

The accident out of which this action arose occurred in the intersection of Wall street and Elliott avenue, in the city of Seattle, at about one o'clock p. m., November 24, 1945. Wall street in that vicinity is an arterial highway and extends in an easterly-westerly direction. Elliott avenue, extending in a northerly-southerly direction, crosses Wall street at right angles. On Elliott avenue, near the southeast corner of the intersection, is a stop sign.

Respondent Frederick L. McClintock, Jr., who will hereinafter be spoken of as though he were the sole respondent, was driving his Ford automobile west along Wall street, approaching the intersection. At the same time, appellant, R. P. Allen, was driving his Pontiac automobile north along Elliott avenue, also approaching the intersection. It is conceded by appellant that he entered the intersection without first stopping at the stop sign, and that the front end of his automobile struck the side of respondent's car. The collision occurred in the northerly half, and near the center, of the intersection. Respondent's car was carried diagonally forward to the north side of Wall street, coming to rest at the northwest corner of the intersection, with the front end of the Pontiac automobile hooked into its left side.

In his complaint, respondent asked for damages in the sum of ten thousand dollars for personal injuries, and in the sum of one hundred seventy-five dollars for impairment of his automobile. The jury returned a verdict awarding him the sum of ten thousand dollars for injuries to his person, and one hundred fifty dollars for the repair of his car. Appellant moved for a new trial upon all of the statutory grounds. The court denied the motion and entered judgment for the full amount of the verdict.

Appellant makes but one assignment of error and one contention, namely, that the verdict is so excessive in the amount allowed for personal injuries that the judgment should be reversed and the cause remanded unconditionally for a new trial, or at least on condition of refusal by respondent to accept a substantial reduction in the amount of the judgment.

As may be expected, there is sharp conflict in the evidence and an emphatic difference of opinion on the part of the parties as to the inferences to be drawn from the evidence produced before the jury.

The evidence adduced by the respondent relative to the nature and extent of his physical injuries, and now claimed by him to support the verdict, may be summarized as follows: At the time of the accident, respondent was twenty-two years of age, was married, and weighed one hundred eighty-three pounds. He had recently received an honorable discharge from the United States coast guard, in which he had given continuous service for three and one-half years. During that time, he was stationed on land in Washington and Oregon, and was never assigned to sea duty. Although of a nervous temperament, he was nevertheless a strong, healthy man, and during his military service was never hospitalized nor ever received medical treatment of any kind. As a member of the coast guard, he frequently did police duty on shore, handling disorderly men, sometimes as many as "fifty drunks a week." His certificate of discharge from the service contained a statement, signed by a medical officer, that respondent had been examined and found physically qualified for re-enlistment, and that he did not require treatment or hospitalization.

Upon his return to civil life, respondent obtained employment as a painter, at a wage of seventy-five dollars a week. He had also made arrangements with a building company to assist in painting for it a series of houses which that company was constructing. He had been employed on a painting job about a month when this accident occurred.

Describing the collision, respondent testified that his automobile was struck a hard blow by appellant's car, and that he was thrown from behind the steering wheel to the opposite side of his vehicle, striking the top of his head against the metal frame of the right-hand door. Although he was not rendered unconscious, "everything went flooey," and he did not get out of the car until about five minutes after the impact.

For several weeks after the accident, respondent spent most of the time in bed. He did not return to work until the following April, a period of over four months, at which time he secured a clerical position at Fort Lawton post exchange. This job, consisting of light work, paid him one hundred seventy to one hundred eighty dollars a month. From April to November, 1946, he lost thirty-seven days because of his inability to work, and from the latter date to the time of the trial he lost eighty-eight hours, due to the same cause. He computed his total loss of wages at $1,952; his doctor bills were shown to aggregate $165.

From the time of the collision, respondent continually has suffered headaches and nausea, frequently has had a nosebleed, and at times has had spells of vomiting and spitting up phlegm. These conditions have constantly grown worse. It is difficult for him to work, owing to his physical weakness. Often at his place of work or at home, he is seized with sick or dizzy spells and is compelled to lie down and rest. Because of his nervous condition, he is troubled with insomnia, and suffers from continuous "jerking" in his sleep. He has gradually and continuously lost weight, the loss amounting to forty-four pounds at the time of the trial.

Respondent was examined and treated by a physician who specialized in neurology and brain surgery. At the instance of this physician, respondent was also examined by another physician who specialized in neurology. The attending physician originally diagnosed the case as one of traumatic neurosis, resulting from respondent's injury sustained in the collision. As the treatments for that condition continued without resulting improvement, however, the doctor changed his diagnosis and concluded that it presented a case for brain surgery, owing to a clot in the brain or an accumulation of blood or fluid between the coverings of that organ, caused by the injury.

The doctor explained that the method employed to relieve such cases was by boring a series of holes through the skull and draining or flushing out the accumulated fluid. This, he said, was both a painful and an expensive operation. He had recommended to the respondent that he have such an operation performed, although he would not state that respondent even thereafter would ever get well. The second physician corroborated the diagnoses made by the first one.

Appellant contends that the evidence demonstrates (1) that the collision between the automobiles was a very minor one, and (2) that in any event respondent's present physical condition is not the result of the collision, but is rather a development of a nervous condition with which respondent was afflicted before the accident.

With respect to the first of these contentions, the jury could have found from the evidence that, even though the impact produced by the collision was slight, it nevertheless caused the aforementioned injuries to the respondent. There was medical testimony to the effect that a serious brain injury may result, even though the blow is not sufficient to fracture the skull; that often a brain injury will occur, although the patient himself does not consider that he has been seriously hurt.

In support of the second contention above, appellant introduced evidence to the effect that, at the time and place of the accident, and again at another time and place, re-

spondent had a nervous attack, or a "kind of fit," and that on each of those occasions he had declared "that is a condition due to war service"; further, that respondent had admitted to appellant's physician witness that "he had had bad nervous symptoms for some time before his discharge" from the coast guard, although this same witness admitted that respondent had also stated to him that "he was always well prior to the accident." Respondent either denied categorically, or else by his own affirmative testimony negatived, these prejudicial statements attributed to him.

It is obvious that the evidence upon the issue here under consideration presented simply a controverted question of fact. This calls for the application of the familiar rule that where, on a controverted question of fact, there is evidence, or there are justifiable inferences from evidence, upon which reasonable minds might reach different conclusions, the question becomes one of fact for the jury, and not for the court, to decide. *Beck v. Dye,* 200 Wash. 1, 92 P. (2d) 1113, 127 A. L. R. 1022, and cases therein cited.

After rendition of the verdict, appellant moved for a new trial upon all the statutory grounds, relying particularly upon the ground that the verdict was excessive. The trial court denied the motion.

Where the evidence is conflicting, as it was in this case, it is wholly within the discretion of the trial court to grant or to deny a motion for new trial made upon the ground that the evidence is insufficient to justify the verdict, or that the verdict is against the weight of the evidence, or that the amount awarded is either excessive or inadequate; and the ruling of the trial court on such questions will not be disturbed, in the absence of manifest abuse of discretion. *Huntington v. Clallam Grain Co.,* 175 Wash. 310, 27 P. (2d) 583; *Dyal v. Fire Companies Adjustment Bureau,* 23 Wn. (2d) 515, 161 P. (2d) 321.

We find no abuse of discretion in the ruling of the trial court.

The judgment is affirmed.

MALLERY, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.